May it please the Court. This case is about defendants' use of an unlawful standard to deny the right, under federal law, of small power producers to lock in a fixed rate to sell power to a utility. The question is what a federal court can and should do about it. I have three points, the what, the how, and the why. On the what, we ask this Court to declare the outer bounds of state discretion as a matter of federal law and to declare that tendering a fully negotiated, executed contract is sufficient to form a legally enforceable obligation. The how, I'll go through the statutory, regulatory, and precedent basis for this Court to do so. And then the why. This Court should do so. If it doesn't, the state commission will eviscerate congressionally mandated support for small power production development. Now the what, the declaration that we seek, comes directly from Section 210 of PURPA. Congress ordered the federal agency, FERC, to prescribe such rules as it deems necessary to encourage small power production. And FERC created this concept of a legally enforceable obligation. Just to help me with this preliminary question, you got the declaration that you wanted from the district court, didn't you? No, Your Honor, we did not. Why not? The district court said that the standard the commission used, the Whitehall Wind Standard, which was unlawful, and we agree with that. The district court got that right. The district court did not declare the outer bounds of state discretion. That's not the court's role. The court's role is to decide whether the standard that the state has adopted is lawful. And it said it's not. Just did agree with you. So I guess I'm not clear on what more was the district court supposed to say that, and in addition, state commission, any new standard you adopt must have these components to it? Not to tell the commission what components the standard must have, but to define the outer bounds of state discretion. It's a matter of a federal minimum standard. The statutory and regulatory basis for doing so, from PURPA, the congressional mandate to encourage the state development, led FERC to create this concept of a legally enforceable obligation. And FERC, a federal agency, has been very clear as to what that concept means. It said in the regulation, it means that a small power producer shall have the option to lock in a rate fixed by the state at the time the obligation is formed. Without this crucial economic certainty that the rate lock provides, there would be no real investment in renewable energy. Let me go at this a little bit differently than my colleague did, and just ask, why isn't this issue moot? All parties agree, Judge Smith, that the prospective rulemaking that the state has engaged in, does not resolve our case. We formed legally enforceable obligations in 2016. But the LEO requirement is no longer operational, correct? The unlawful standard is not operational going forward. And the plaintiffs do not assert that the new LEO requirement is unlawful? The new LEO requirement does not relate to us. But just a minute. As I understand it, the old one is no longer operational, the new one is not unlawful, and now I have to turn to the capable of repetition test. So I'm trying to figure out, if the one I've got is no longer operational, and nobody's the new one is unlawful, then why is there any capable of repetition? Your Honor, everyone agrees the new one does not apply to us. The question here is, what lawful standard governs the legally enforceable obligations we formed in 2016? But, again, it's only the defendant that can return to this former standard. They can't, there's no evidence it intends to return to the former standard. You can only be injured by the application of the test. I'm, again, trying to figure out why it's not moved. Judge Smith, if you send this case back without the declaratory and injunctive relief that we asked for, defendants have already said they will refuse to recognize the legally enforceable obligations we entered into in June of 2016 prior to the rape slash. They've already said they will continue their unlawful conduct of refusing to recognize our obligations. Well, then are we really looking at an 11th Amendment problem? Because it seems to me at that point you're wanting to seek, if you will, retroactive relief. No, Judge Smith, there is no 11th Amendment problem here. The district court got this wrong. We fall squarely within the Ex parte Young exception because we have a challenge to correct an ongoing violation and we seek prospective relief. But there is no, why is there an ongoing violation? There was one determination that you had not established to Leo. After that, the non-ability to contract at the higher rate is just a continuing impact of that one decision. How can that be a continuing violation? Defendants have an ongoing obligation to implement PURPA. I understand that, but there was one determination and that one determination is the only thing we have in front of us. The inability to contract at that higher rate, all that is is a continuing impact of that one decision which is over. And now I'm trying to figure out why then it's a continuing violation. Judge Smith, because we want to sell power in the future. And I would point the panel to the Doe decision which we cite in our papers where an employee who was unlawfully fired got reinstatement in his job. And that relief related to the past violation, the unlawful firing, but wasn't compensation for that past violation because he didn't get any lost wages. Same here. We're not seeking damages for the fact that for the last three years we've been denied the ability to sell power. We only seek the ability to sell power in the future and get paid for that power. The basis, Judge Watford, if I can get back to your question, the basis for this court doing so comes from the statute, from PURPA telling FERC to prescribe rules to encourage small power development, FERC's clear regulatory rulings as to what a legally enforceable obligation is, that it is a unilateral, unequivocal commitment to sell, which is broader than a contract and is noncontractual but still binding. That, FERC has said over and over again, prevents the utility from avoiding or delaying the requirement to buy power. A utility cannot require a fully executed contract, FERC has said.  Congress required states to implement federal law, but state discretion to do so is limited. The implementation must be consistent with federal law. And Congress gave federal courts exclusive jurisdiction. Just describe the further declaration that you want the court to issue. Yes. It is to declare that as an outer bound of state discretion, tendering fully negotiated executed contracts is sufficient to form a legally enforceable obligation. This mirrors the FERC articulations in the decision below in the FLS decision, Cedar Creek, Murphy Flat, Grouse Creek, J.D. Wind, decades of FERC precedent articulating the legally enforceable obligation standard in this way. And for this court to be able to articulate that comes from Section 210H2B of PURPA, where this court may not only require the state to comply with federal law, but issue such injunctive or other relief as may be appropriate. This is a very broad remedy to constrain state discretion. And it comes from the very essence of cooperative federalism. The Supreme Court said in FERC v. Mississippi, states operate within limits established by federal minimum standards. And it's very similar to what this court has done before, articulate federal minimum standards, consistently with FERC regulations. I would point you to the CARE decision just a few weeks ago. This court articulated the federal minimum standards constraining state discretion as to avoid a cost calculation. Another area where the state has significant discretion, but only within the bounds of federal minimum standards. The independent energy producers decision from 1994 is another example of this. So that is our basis for saying that this court can declare that tendering fully negotiated executed contracts is sufficient to form Leo. Defendants are the ones making a radical argument that this court has no authority to say what a federal law is. I do want to get to the why. This case shows exactly why Congress gave federal courts the power to enjoin states. Here we have in the record a commissioner caught on a hot mic saying that their rule making will kill off qualifying facility development. He said no one will want to get into it. We have the chair of the commission op-ed scathing indictment of federal energy policy. If this court sends qualifying facilities back without this declaratory injunctive relief, defendants will continue violating federal law, will put us on a hamster wheel bleeding qualifying facilities dry, eliminating that competition. But the problem, I guess, comes back again to the one question I keep asking you. I don't find any evidence in this case that the defendant can return to the former standard. I don't have any evidence that intends to return to the former standard. I don't have any evidence in this case that would make it then something I need to go on and make some grandiose statement about what they can or cannot do. If the case is moot, it's done. Judge Smith, the case is not moot because the prospective rulemaking cannot resolve our issue. They're saying they've committed a wrong, they've used an unlawful standard, and there's no remedy. They said so on page 16 of their fourth brief. But you don't seek back damages, you just said. So if you don't seek back damages and they've remedied the problem, why am I involved in order to make some grandiose statement about what they've got to do in the future? If they do something wrong in the future, you bring your case. Judge Smith, we're not asking you to declare what they should do in the future. The question here is what a federal court should do about the fact that we formed legally enforceable obligations in 2016. Everyone agrees the prospective rule, anything they do in the future, does not govern that. They created this generally applicable safe harbor in Order 7500 before they slashed the rate acknowledging that they have to recognize valid LEOs created before that date. And in that Order 7500 safe harbor, they utilized an unlawful standard. But that standard has changed. They will not go back to that standard. There's no question about that. There's no evidence. Exactly. So at that point, I'm trying to figure out why it is I have some duty to do anything. If the standard that they used is wrong, you won on that. In fact, the district court suggested you won on that. They granted your summary judgment for this relief, if you will. I guess I'm still trying to figure out where we are. All we're looking here now is injunctive relief. That's all we're thinking about. Declaratory and injunctive relief. Well, I understand what you want declared, but okay. Injunctive relief to enjoin the state from refusing to recognize legally enforceable obligations that were formed by tendering fully negotiated, executed contracts. Don't you want more than that? What you really want is the rate that was in effect. No, that's not right. No, we only seek the declaration of the standard, the federal minimum standard that governs state conduct and an injunction to prevent them from failing to recognize validly formed LEOs. No fact finding is before this court. Whatever rate is currently in effect, a QF shows up with a LEO, they're automatically going to get their contract, and you're not concerned about what the rate is? We're not concerned about what the rate is now. We're not concerned about the standard now and going forward. This is about the fact that we formed LEOs in 2016 when the rate fixed by the state was in effect. They've denied us the right to sell power at that fixed rate by using an unlawful standard. And the question before this court, Judge Smith, is what is the remedy as it stands now? The remedy is there is no remedy because you don't want any damage because it would be retrospective. You don't want anything except what you've already got, a change in what they're going to do in the future. It's already changed. There's nothing like it's going to go back to the problem you pointed out. Judge Smith, they've created the safe harbor in Order 7500. Well, they did not. They've got rid of it, and there's no evidence they're going to return to it. They've created the safe harbor that says folks who created legally enforceable obligations before this rate suspension are entitled to the prior rate. And we say that we're entitled to that rate. They used an unlawful standard. And if this Court doesn't declare that what we did is sufficient to form a LEO and doesn't enjoin defendants from failing to recognize those validly enforced or valid legally enforceable obligations, we won't be able to sell power in the future at that prior rate that we locked in before the suspension. I'm confused about your remarks. Do you or do you not want the rate that was in effect on June 16th, 2016? Your Honor, our argument is that we're going to be able to do that. Do you want that prospectively or not? We — our argument is that we are entitled to that rate because we formed legally enforceable obligations, but we do not ask this Court for any fact-finding as to whether we did actually tender the PPAs here. But you want a theoretical holding that you're entitled to the rate. No, Your Honor. We want a declaration as to what the Federal minimum standard is and an injunction Do you or do you not want the rate that was in effect, the 66 cents per megawatt hour? Your Honor, as a factual — Yes or no? Yes, Your Honor, but that question is not before this Court. The question of whether the facts on the ground actually entitle us to that rate is not before this Court. The only question before this Court is the lawful implementation challenge, which is — which requires, as a remedy, the declaration of Federal minimum standards and an injunction to stop the State Commission from failing to recognize validly formed leos formed to entitle us to that rate. Okay. Thank you. You've exceeded your time, but we'll give you a couple minutes for rebuttal. I appreciate that. Thank you. Let's hear from counsel for the Commission. Good morning, Your Honors. May it please the Court, Philip Roselli, representing the Appley and Cross-Appel, the Montana Public Service Commission. I would like to reserve three minutes of my time, if I could. Well, yeah, I recognize that there's a cross-appeal here. Why don't we see how the argument plays out to determine whether you, yourself, are going to get rebuttal time. Fine. Thank you, Your Honor. I will agree with one point that counsel for Bair Gulch made. This case is all about boundaries, but it's about the boundaries of the Federal Court and the jurisdiction of the Federal Court in terms of the relief that these specific plaintiffs are requesting. No doubt they stated an implementation claim, and if that's as far as they went, that would be fine. It is within the province of the Federal Court to look at a state's specific implementation of PRPA and to pass judgment on whether that implementation is consistent with PRPA. It is far beyond the bounds of the Federal Court's jurisdiction to go further and afford the specific relief, the specific as-applied relief, that these plaintiffs are seeking. Can you remind me, because I'm hazy on this now, so the Commission has set forth a standard that will determine whether folks in their shoes did, in fact, form legally enforceable obligations. Is that the? Yes. The Commission had adopted a standard. It was called the Whitehall-Winn standard. No, no. Yeah. I'm talking about after that. Okay. So you adopted it because that was declared unlawful by FERC, right? Well, let me say this. FERC issued what we would call an advisory opinion. It's not binding legal authority. FERC did in the FLS energy decision say that in their estimation, the Whitehall-Winn standard did not comport with PRPA. Okay. And that's what I would get. So then the Commission announced a new standard that you think does comply with PRPA? Well, in 2018, the Commission vacated and replaced the Whitehall-Winn standard, which gets to Judge Smith's questions on mootness. The only relief the Federal Courts could grant would be to tell the Commission, someone has raised an implementation challenge. They say that your implementation of PRPA does not comply with PRPA. They say in specific that your LEO standard does not comply with PRPA. We agree. You must vacate it. You must fix it. It's already been vacated. That is the most relief that the Federal Court could grant in this situation. But I'm trying to figure out, this is what I can't remember. For folks who, just looking back to 2016, right, so folks in their shoes. I thought the Commission had set forth a new standard that would govern which of those folks would be entitled to basically enforce the contracts they were trying to enter into, but they've just, but you've set the bar at a certain level that they can't meet. Am I wrong? It was an established standard. The standard that applied in Order 7500 that the Commission issued in 2016 incorporated the then-extant Whitehall-Winn standard. And there's no dispute on these facts. The plaintiffs did not satisfy the Whitehall-Winn standard. If they did, we wouldn't be here. Their argument is that, number one, the Whitehall-Winn standard did not comply with PRPA. Number two, court, therefore, strike it down. Number three, replace it with a preferred standard of the plaintiff's own creation. And number four, find that these plaintiffs, therefore, satisfied that replacement, albeit non-existent, LEO standard, and are therefore, Judge Selma, as you asked, entitled to a specific rate and a specific contract at a specific rate for their specific project, $66 a megawatt hour. Well, I hear them saying something different today. I don't know how the requested remedy may have evolved over the course of the litigation, but today, at least, they're saying that by, that whatever the, whatever they did back in 2016, under whatever standard you, the commission, would want to articulate, if it's going to be compliant with PRPA, we did, in fact, form LEOs, right? And by your, by the defendants, refusing to recognize that, that you're in violation of PRPA and we have the authority to say that that's the case and go back and try again. But they're just asking us to provide guidance so that y'all won't get this wrong, you know, on the, on the remand. But the key, Judge Watford, is, first of all, the standards are already been replaced, but to go back and try again must operate prospectively. And what's your, what's your authority for that proposition? The Eleventh Amendment to the, they're not seeking any relief from the state. Well, they are. Certainly not any retrospective damage, is that what you're suggesting? The Eleventh Amendment is not limited to damages, the Supreme Court made that very clear in the Curry v. White decision in 1982. I know the plaintiffs have made that argument, but the Supreme Court was very clear that the protections and immunities afforded to state governments and state officials are broader than actions that seek monetary damages. I don't see any Eleventh Amendment problem here, certainly not with, if you are applying to them a standard that's not PRPA compliant, we have the authority to tell you to stop doing that and to, or apply to them a standard that is PRPA compliant. Agree to a degree, Your Honor. You have the authority to tell them to stop doing that, prospectively. But if you start with the fact that the Eleventh Amendment prohibits these plaintiffs from hailing the Montana Commission or its commissioners into federal court, unless they qualify for the very limited exception under Ex Parte Young, that's where you must begin your analysis. And the case law under Ex Parte Young is clear. It's a limited exception that allows federal courts to assert jurisdiction over state defendants, notwithstanding the protections of the Eleventh Amendment, provided that what the plaintiffs seek is prospective declaratory judgment to cure an ongoing violation of federal law. To Judge Smith's point, there is no ongoing violation of federal law. If there ever was one, we would dispute that there was one, but regardless, the Whitehall Winn standard is no more. And everything about what plaintiffs ask is retroactive relief. To give them the relief, the additional relief they asked for in the complaint, this court would have to go back in time to the year 2016, eliminate the Whitehall Winn standard, the Leo standard that did exist, there's no dispute, but that plaintiffs did not satisfy that, strike it dead, promulgate impermissibly a replacement standard in the year 2016, apply facts to determine that these plaintiffs satisfied this replacement, if nonexistent, standard in 2016, and thereby award these plaintiffs a specific contract for their specific projects at a specific rate. That is both impermissible as applied relief, as the Winding Creek Court made clear, as the Alco Court made clear, as the Power Resource Group Court made clear, and it's also impermissible retroactively. I guess I don't, I just don't find that a very satisfying argument, because if I understand what you're saying, you, the commission, could, let's just say, for a period of two years, in blatant violation of PURPA, not recognize Leo's, that PURPA demands, you know, be recognized. You get sued, but all of that past conduct, you say, gets insulated now, because you decide voluntarily to change the standard going forward, and now you, you know, let's say that you announce a PURPA-compliant standard, and so you come into court, and you say, hey, federal court, there's nothing for you to do, we've already fixed the problem, and we say, but you violated these people's rights under PURPA for the last two years, they're not going to be, they're not going to have any remedy, and you say, well, that's too bad, because you don't have the authority to fix that? That's, I guess, what I hear you saying. Well, to a degree, that's what PURPA provides, and three of the cases we cited, Winding Creek, which came out of the Northern District of California, which is up before this court, as you know, also in a PRG case out of Texas, and also in a recent CARE case, there was discussion of this. In all three of those situations, the court, the district court determined, yes, we do see a problem with PURPA. We do see that there is a problem with the state's implementation of PURPA, but all three of those courts appropriately stopped short of going across the line to which plaintiffs invite this court. In the words of the Ninth Circuit in the CARE case, federal courts cannot veer into the realm of as-applied relief. They cannot afford specific contracts at specific rates to specific plaintiffs. In the words of the Winding Creek district court judge, that goes too far. Why can't we say that during that two-year period, the standard you all were applying was unlawful, and you need to announce a new standard that governs whatever LEOs might have been formed in the interim? We're not telling you what it is. We're not telling you that you must recognize this contract or that, and you must allow them to sell the power at this rate or that. We're just saying that the standard you had in place for that two-year period, we recognize going forward it's been fixed, but for that two-year period going back, the standard you applied was unlawful. You hurt a lot of people that had their rights under PURPA violated. You need to go back and announce a standard that governs that interim conduct, and that is PURPA compliant. Why couldn't we just do that? A couple of thoughts, and I appreciate your question. Number one, again, if the court were to provide that direction and say develop an alternative standard and apply it retrospectively over the last two years, that's problematic. That falls right squarely within the prohibition of the 11th Amendment, because that is retroactive relief. There's also a Fundamental Administrative Procedure Act problem in that, because when commissions, agencies, promulgate rules, when they change rules, those rule changes operate prospectively. So there's two fundamental and gripping problems with the suggestion that what the commission should be made to do is come up with a new standard and then look backward in time and apply that standard to a cast of potential operatives in the past. Can I, then help me with this, because I don't even understand this basic point. If the plaintiffs here were to be victorious in the full respect that they want, and their leos were recognized as having been created and they're now entitled to sell this power at whatever the, that is selling power for some period of time going into the future, right? I know they make that argument, but the obligation or their ability to invoke the requirement that the utility in question, Northwestern Energy, buy the power, everything about that would have occurred in the past. There would be no contract that would come to fruition in the future to sell or deliver future power to Northwestern, but for the ability to go back in time and change the events that occurred and the standard that applied in the year 2016. Everything they ask for shouts out to you, 2016, and no matter how many times they cast and recast the relief that they purport to seek here, it all comes back, Judge Selma, to the questions you were asking. They want a specific contract at a specific rate, $66 per megawatt hour, and that's that. But the effect then of recognizing the contract that supposedly was formed in 2016, let's just say we recognized it as of today, it would be that they could sell to Northwest power for, I don't know, three years, five years into the future from today at that rate? Well, more like 15 or 25 years, depending on the outcome of an appeal pending in state court. But I'll say this. Yesterday, I was watching the proceedings in front of the court and you took some, you had a case dealing with Monarch Butterflies, and in my mind, that invoked the butterfly effect, which is to say the events that they seek, the result they seek, to suddenly find ourselves in the year 2019, where they now have a Leo that they clearly don't have at this point in time, somebody, and they're inviting the court to do it or asking the court to order the commission to do it, somebody has to go back in time and change what actually happened in the year 2016, because there's no debate on this point. There was a standard in 2016, and in their own papers, they admit they didn't satisfy the standard that existed in 2016. No questions. Okay. Thank you for your time, and it's unclear if there's any time remaining for rebuttal or not. I mean, I guess I'll, you've got a minute and 39 left. We'll see if you need it. Okay. Thank you, Your Honor. Very good. All right. So let's give you two minutes for rebuttal. You had used up all your time, but we'll give you some extra. Thank you, Your Honor. Just three brief points. First, defendants have conceded that there is no rule currently on the books that applies to folks like us, that applies to qualifying facilities that are subject to the safe harbor in Order 7500, because the Whitehall Wind Standard has been ruled unlawful. So what we're asking this court is to declare the federal minimum standards that will constrain state discretion when we go back to them. Now, the second point as to what is going to happen to this case on remand. We don't ask for prospective rulemaking by the state. We agree it wouldn't be fair to ask the state now to promulgate a new standard, say that a contract had to be signed in red pen and apply it to us back then, right? That's the fundamental unfairness of retroactivity. What we ask is for them to engage in ad hoc decision making. On page ER 182, that's the articulation of the safe harbor in Order 7500, they acknowledged that they can engage in further ad hoc decision making to add other folks to that safe harbor. And when we go back to them after this case is done and we say we should be included in the safe harbor, their discretion to make that analysis has to be constrained by federal minimum standards. My third point is that this is not as applied relief, Judge Sullivan, this goes to your question, because we are not seeking for this court to give us a contract, for this court to say a certain rate should apply to you. We're asking for the declaratory and injunctive relief guidance to constrain state decision making. Then the chips will fall where they may. In our case, we say the facts are undisputed. As to other qualifying facilities, their facts may be disputed. We're not asking for this court to make any of those resolutions or to engage in any fact finding. I'll just close with a point from Ferk v. Mississippi. The entire concept behind PURPA is that it represents a federal intervention into state decision making, because Congress recognized that state commissions and utilities were hostile to new power, and Congress said we need to diversify the country's energy supply. This is exactly what's happening here, these hostile powers are lined up to stop renewable energy and we shouldn't let them do that. Thank you. Thank you very much, counsel. Do you have anything further you want to say? Okay, sure. Thank you. I would just, two points. Number one, yes, I understand that plaintiffs have reformed their articulation of their relief yet again to refrain from asking the court directly to order the implementation of this impermissible relief. They now ask the court to issue, for lack of a better description, a double negative injunction aimed at the commission to compel the commission to do that which the court can't do. And I would submit it would be inappropriate for the court to order the commission to do indirectly what the court cannot do directly. As regards PURPA and the reason and the basis for its enactment in 1978, there was another important and equally important platform with regard to PURPA, and that concerns rate payers, the people who have to pay for this power. And PURPA is very clear that this is an avoided cost standard. And the reason it's an avoided cost standard is the notion is that the retail customers paying for actual electricity from the utility shouldn't have to pay any more than if the utility obtained that power elsewhere. They should be indifferent to whether the utility is paying for power from the qualifying facility or producing the power or buying the power elsewhere. And when you have an outsized and no longer accurate avoided cost rate, and there's no dispute in this case, but that the $66 per megawatt hour rate did not accurately reflect Northwestern Energy's avoided cost, when you're in that situation, the rate paying customer is far from indifferent about the sales of energy from the qualifying facility. I thank you. Thank you, counsel. The case just argued is submitted, and we are adjourned for the week. Thank you.
judges: N.R. Smith, Watford, Selna